Welcome to the Ninth Circuit. Judge Bybee and I are glad to have you here in the courtroom, and we're glad to be with you, and we're especially grateful for Judge Rakoff, who is visiting, helping us finish out our calendar. We're grateful for your patience as we push this case off, I know, with good reason, but the time has come, and so we'll get to the arguments. And we'll hear argument in Chambers v. Herrera, case number 20-55004, and we have Ms. Hannon. May it please the Court, my name is Christine Hannon, and I'm a certified law student with the UC Davis Civil Rights Clinic. I represent Appellant Mr. Roscoe Chambers. At this time, I'd like to reserve three minutes for rebuttal. Today, I will be addressing the impact of Egbert v. Boole in this case solely for the Eighth Amendment claims remaining. Absent of Bivens cause of action and implied damages remedy, Mr. Chambers will suffer a grave loss. Protection for his Eighth Amendment rights against cruel and unusual punishment. Mr. Chambers' Eighth Amendment claims survive because they do not prevent new Bivens context, no special factors counsel hesitation, and Mr. Chambers has no alternative remedies. Most importantly, there is no separation of powers concern at issue. First, Egbert does not foreclose Mr. Chambers' Eighth Amendment Bivens claims because the claims survive the Ziegler v. Abbassi test and do not require the Court to step into Congress's role. Further, defendants weighed this argument regarding implied Bivens actions, causes of actions as to the excessive force and deliberate indifference to medical need claims by not including these arguments in their initial briefing. Egbert did not change the Bivens analysis, and defendants needed to raise the Ziegler issue in opening. Second — Can you repeat that? You said Egbert did not change the Bivens analysis. Is that really accurate? I mean, you know, the Court seems to suggest that they've tweaked the test in Egbert compared to even what they just did four years ago. Justice Sotomayor, in her dissent, very stridently accuses the majority of basically, you know, a bait-and-switch. So how — what's your position on why it didn't change the test for a Bivens claim? What Egbert did, what the Court did in Egbert is they narrowed the issue to really a single question. They did not remove the two-part test, but they really focused it down onto whether Congress is more equipped than the courts to deal with these issues. So the particular issue in Egbert, the Court did not directly discuss the first part of that test, the context. They agreed with the lower court and moved on from there to special factors. And they really focused in on the special factors that dealt with it being on an international border, but it was remarkably different from the corresponding case. But they also did analyze — I mean, they certainly — I mean, you agree that Justice Sotomayor says that they changed up the test. I mean, even Justice Gorsuch in his separate concurrence says, you know, why are we doing this? I mean, this is almost tantamount to overruling Bivens. So the application — I mean, you're saying just because the words don't change, therefore there's no new test that's coming through in Egbert? Not exactly. I — so Justice Sotomayor and Justice Gorsuch had kind of competing concurrence and dissent about it, and I think that they got to points that the majority was unwilling to go to at that point. And in fact, Justice Thomas explicitly said at the very end of the opinion, this does not shut down Bivens' causes of actions. He had the opportunity, and the Court did. Well, what he says at the end, it doesn't shut down Bivens' cause of actions, specifically in the Fourth Amendment context where Bivens was created. So I — you know, I don't think he's — I mean, I think Justice Thomas, the majority opinion is — the whole line of reasoning is that we're going to narrow Bivens, you know, even more than it has been in the past. I mean, they do sort of change the analysis. I mean, the — for example, you mentioned there's no alternative remedies, but it seems to me that alternative remedies have sort of been switched up now because in Egbert, it wasn't even whether those alternative remedies had to provide for relief. It just had to be a possibility that Congress had allowed the executive branch to adopt a remedy. And that's one of the things that Justice Sotomayor really hits up the majority on. So I guess if the test has changed that much, and Justice Sotomayor seems to think so, and if you look at the language from the majority, it does seem to be quite a bit more narrow than the prior test, Ziegler and so forth. Why wouldn't they be able to challenge and say, hey, we didn't think we had an argument under Ziegler, but now we have Egbert, and in their supplemental briefing they said, you know, we're not sure this — we now are making the argument that it doesn't — it's not a Bivens claim. So it's about the point of when they raised it. So they didn't address the Bivens issue. Opponents didn't address the Bivens issue as it relates to those two claims, excessive force and deliberate indifference to medical need, until their January 10th 28J form, which did not give plaintiff an opportunity to properly consider that. We did brief on those issues, but not directly in response to their arguments. We briefed with anticipation of bringing this issue to the court, holding that argument — So is that the argument? Do you think — I mean, because if a new Supreme Court case comes down and it does set up a new test, and we'll have to decide to what degree that's true, is your position that we should give you an opportunity — at a more fully briefed that? That would be what we would request in that particular scenario. Would you want additional briefing to this court, or are you asking for permission to amend your complaint? The bottom line remedy that we're seeking is an opportunity to amend the complaint when a third amended complaint. Even though your client told the district court he was not interested in amending? So my client is — was a pro se litigant at the time. We didn't step into representing him until this Ninth Circuit appeal. And what he misunderstood at the time was the process. He had filed all the paperwork he thought was necessary. He had said what he thought he needed to say. He misunderstood the fact that he needed to plead more specifically and more detail on his complaints than he did at the time. Okay. So why don't you — I would be very interested in hearing you go through your arguments, and I am particularly interested on the medical indifference. We haven't — we haven't discussed this previously with my colleagues, so they'll have their own views, but I would in particular like to hear about the medical indifference claim. Okay. So the medical indifference claim is most like Carlson, we would argue, which is still considered a case under the Bivens broader doctrine. That one was for defendant Escatini, and this particular one is pretty straightforward. So the concerns about the differences in special factors that would be — cancel any sort of hesitation — might be agency. So here we are in a Federal Bureau of Prisons environment. This was not a private contract prison. This was very much the same as what Carlson was experiencing. In this particular case, defendant Escatini failed to properly treat my client. It's noted most relevantly in the excerpts of record in the Second Amendment complaint at 172. It's also noted in the complaint at 102. But he was injured at the time. He had — he alleged he had a broken wrist and a broken arm, and the defendant in his role as a physician's assistant refused to x-ray that, refused to treat it for upward — Can I — can I ask about that? Because I — it looked like — maybe I'm misreading the complaint, and I know he's pro se, but it talked about a potential broken wrist. I didn't see the arm. Is that crept in later, or did he have those both in the complaint? It's in the Second Amendment complaint. I don't know off the top of my head if it was detailed specifically — Okay, but he alleges that he broke — that his arm and his wrist were both broken. Okay. At 172, it says refused to treat my fracture arm and wrist. I mean, the pleading here really is utterly inadequate. I mean, we — the Eighth Amendment covers cruel and unusual punishment, a deliberate indifference standard. It doesn't cover medical malpractice. So if it's been misdiagnosed, then that's — that's just not a complaint that he can bring under the Eighth Amendment. So what you're doing here is asking that you — that you be given an opportunity to — to amend. Particularly — yes, and particularly because it wasn't just a misdiagnosis. Some of the — some of the facts that my — Right, but you can't tell that from the complaint. There's just no — there's just nothing here. Right. There's one more fact in — that's in the complaint that actually goes — which we removed because it deals with the First Amendment retaliation issue, which is no longer viable — was there was a belief that — that Defendant Escutini was colluding with Defendant Herrera to not treat him because he was trying to cover up the harm that Herrera had done to him. So it wasn't just a failure to — to treat or any sort of medical malpractice. It was — it was an act of thought to not do so. So — so just so I'm clear, if we gave you leave to amend on the medical indifference claim, what would you now state in your complaint? What would — what would we now state in the amended complaint? Yeah. So we would have to go back to my client and revisit his understanding of the events, and we would add more details as to how the district judge were to fill out the scene of what happened, what was going on around the defendant at the time — the plaintiff at the time Mr. Chambers, how Mr. Escutini was or was not doing his job, any other details that he can remember at the time. Well but if you are asking leave to amend and asking us to remand for that purpose, isn't it incumbent on you to be able to say now what it is that would make that other than a futility? Yeah and I, excuse me, yes and I understand the question. So we have been appointed temporary counsel for Mr. Chambers with the specific Ninth Circuit appeal. We have not been moving through the district court with him at this time with the clinic. If we were to have the opportunity to remand, we would help, we would potentially if we were reappointed to the case, work with him on that issue. But we have not had the opportunity to flesh that out with him in the current, in the current setting. So it's not clear that the clinic would be counsel for Chambers if we remanded this? No it's not, it's not clear. So that would be to my clinic coordinator and the court potentially and the client. So I also want to address, you know, regarding, barring any questions, some of the other concerns around the different. Can you address, assuming we did not think that they'd waived or that it's, it's viable that post-Agbert they could actually challenge whether these are Bivens claims, what's your best position? I guess your position is just Carlson handles the medical, the lack of medical care claim. That that, this is not a new context because of Carlson. Right, so the Carlson handles really most clearly the claim against defendant Escotini for that medical need. The broader, and this is briefed in our most recent briefs, but the broader deliberate indifference standard really, we would argue, extends to a broader conditions of confinement, which this court discussed, excuse me, the Supreme Court discussed in Reed United States, excuse me, that was this court. And then that was basically discussing a broader interpretation of the Hudson v. McMillian standard, which was a Supreme Court case that, though not a Bivens case, extended this deliberate indifference standard to broader conditions of confinement. So in that excessive force category, we're talking about the issue of whether or not those plaintiffs were deliberate indifferent to my client's needs when they, when they acted in the way they did in that excessive force category. I see I'm at my time. I've, I've, I've got, I've, I've got a number of questions. I think the panel will have more, more questions for you. So on the excessive force, the closest case that you've got is what, Bivens case do you have that's closest to your excessive force? So these are all under the Carlson case. But, but Carlson's not an excessive force case. It's a medical, it's, it's a deliberate indifference in a medical context. So the concern that I have with unboxing each of the Fourth, Fifth, and, and Eighth Amendment claims, Bivens, Carlson, and Davis, is the Supreme Court has narrowed, as we've talked about through Egbert, the way that we look at these cases. And so, yes, the Fourth Amendment case, Bivens, was an excessive force case. I was concerned about reading that across to Carlson and kind of connecting those cases outside of their individual amendment boxes. Wait, Bivens, I thought Bivens was a search and seizure case. Yes, but it involved a, I believe it involved an excessive force element. So I, so I guess my concern at this point is that, is that one way of, that I understood Egbert is that we have been told not to expand Bivens. So that, that the Court came very close to just simply telling us that it had buyer's remorse over, over Bivens and, and undoing the whole thing, decided not to do that. But it looks like these cases may have been confined to specific contexts. It looks to me that you have a very plausible argument that Carlson covers your medical indifference claim. I'm not sure it covers your excessive force claim. And if it doesn't, then we're back to the, to the Egbert standard that, that, that Judge Nelson was talking with you about. That is, is this better left, is this better left to Congress? So if Carlson is the best case you've got for, for covering the excessive force, it, it looks to me like, like we've got, we've got some thinking to do about this. It doesn't seem to me to be an easy remand for you. No, I do understand that. And if you, so the argument that we're making is the one that I just made, that deliberate indifference is not specifically limited to medical need, that it actually exists in that broader conditions of confinement, and actually also extends to the failure to protect claims that were individualized to each of the other defendants. And so if the court is concerned about expanding in that realm, while I do understand that, I think that the Supreme Court has said in the past, in a number of cases, that deliberate indifference is not limited to medical need, and can extend off to... But it hasn't said that in the context of Bivens. Said that in the context of what, a 1983 suit? That was an, yeah, it was a state, an Eighth Amendment violation claim, yes, it was. Yeah, but in, but in, but in the 1983 context? Yeah. Okay. What about the failure to protect? So the failure to protect, what's your question on that specifically? Well, what's your best case for that? Best Bivens case? So the Bivens case, again, all of these are going to exist under Carlson. So Carlson's the best you've got under that one? Yes. What about Farmer? So it's interesting, because Farmer doesn't get mentioned. I'm interested, and I'd be interested to hear from the government on this. Farmer is a Bivens case, and yet the Supreme Court doesn't talk about it. Justice Thomas says in 42 years, we haven't expanded it, and he doesn't even mention Farmer, and Farmer would have fit within that. Do you, I mean, Farmer supports you a little bit on some of these, doesn't it? It certainly does. The issue with Farmer is, one, it's not one of the three recognized Bivens cases, so we hesitated. But why, help me understand why it's not, because it's clear, it is a Bivens case, right? Yes, it is. So the court in that specifically, in the Farmer case, remanded, and they didn't dive as much into the Bivens issue as they did in the three court cases. So I think the Supreme Court's hesitation to bring Farmer into this broader core case law was because it wasn't as strong in the Bivens category in that particular setting. But if you've got, but the failure to protect, the failure to protect claim seems to me to be one that really might run up against Egbert, because this looks like this really may put, you know, the government's, the government's concern was that this would be pitting guards against each other, each trying to avoid liability by tattling on each other, and that there were other ways for prisoners to bring these kinds of claims when they, when you had a failure to protect. But a failure to protect is a very, very difficult claim to make in a prison context. Yes. And so that's why I'm just, if Carlson is the best you've got, I'm wondering whether we don't really run up four square against the problems that Egbert described. So I will say in reading Egbert, I think that while the court cautioned against expanding too far, they left the door open enough to consider these broader issues. The failure to protect specifically in this case really hinges on the individualized actions of the officers. Yes. If this was an officer that we were saying did, failed to train lower officers and in doing so they acted outside the scope of the law, that would be an issue that would be concerning. However, each officer in their role, the ones that are named here, failed specifically in the case of my client. They failed to do what they were required to under the Bureau of Administrative Administration. And did your, did your client file, file a complaint? He did. He filed several, what they call BP 10 forms, several of which were denied. I believe one eventually was accepted, but. And since, and since those were processed and some of them found not meritorious, and at least one found possibly meritorious, then why isn't, why isn't that, why isn't that sufficient and why should we be in the position then of creating an independent constitutional tort to regulate the BOP in that way? So this is rather different from Egbert. In Egbert's case, he had and did file administrative remedies through that particular process. He even filed an FTCA claim. In our case, our client filed these claims, or at least handed them to the officers, and the officers did nothing with them. They did not file them. They did not process them. So in his case, there was a, there was a remedies process, but in his case, it did not exist. Wait, in this case, it did not exist? Well, it exists. It seems like you're saying the remedies process did exist. It just wasn't, it wasn't followed. Yes, constructively for my client, it didn't exist. They weren't denied. They weren't rejected. They were, they were just not processed at all. And so if Congress wants to have an administrative remedies process, that, that's a great route to deal with claims like this. However, when the individual officers that are being handed the complaints do nothing about it and do not follow that process, the court has said in Malesko and other cases that this is where Bivens steps in. When those remedies fail, Bivens fills that hole. We're kind of coming back to it because I think you might be right that that was the test, but as I read Egbert, Egbert tightened that up quite a bit. I mean, Justice Thomas, in the majority opinion, specifically says you don't even have to prove that there actually is an adequate remedy. The fact that there's a potential remedy is enough because we're going to let the executive branch handle this. And if Congress thinks that they, you know, need to tighten that up, let them handle it. But, but we're not going to get into the, we're not going to send it to the judicial branch to try and decide whether these remedies are adequate or not, are followed or not. You know, so I'm just wondering why Egbert hasn't changed that analysis. Egbert honestly focused on much different scenarios. It did not in great detail discuss these administrative remedies process, in part because, you know, this was a person that was dealing with a First Amendment complaint, excuse me, a Fourth Amendment complaint, and was not in the Bureau of Prisons. It's a very different setting and a very different set of facts. In this case, my client deals with a process that of course is set up by Congress, but if it's not followed, what is there left for him to seek remedies on? It's a good argument. And Sotomayor in the dissent makes the very argument that you're making, but the problem was she was in dissent. And I think that's, that's my question, is that it seems like Justice Thomas has said, you know, we're not going to even get into the analysis of whether the remedy is enough. I mean, clearly it never had to be a full remedy, even under Malesko, but it seems like the court in Egbert went a step further and said, even if there's a possibility of a remedy, we're going to look to that possibility of a remedy and that, you know, we're going to leave that in the executive branch. We're not going to allow it in the, we're not going to bring it in as a constitutional claim. You obviously have a different interpretation of the case. I do have a different interpretation of that, and I appreciate the difference there. I think that the concerning part for me in that more narrow interpretation is that there will always be a remedy. There will always be an administrative process or an FTCA claim or another process available to somebody that's seeking to file against a federal employee individually. Unfortunately, the FTCA doesn't hold rogue officials individually accountable, and so Bivens is meant to do that in the three different doctrines that we have that in. So, so Counselor, there's an interesting,  Your, your general rubric for this argument is a failure to protect. He has filed administrative claims, and now you're telling us that those were never processed. And that feels like a straight-up due process argument, not an Eighth Amendment claim. But, you see, you've argued, you've argued that you're arguing the Eighth Amendment claim. That is, you want us to just, to just handle this de novo as a failure to protect, whereas he's already filed paperwork with BOP that says, look what these officers did to me, and now he's complaining that they didn't do that. Don't you have a Fifth, don't you have a Fifth Amendment due process claim that you really need to bring rather than an Eighth Amendment claim here? That's something that we can definitely consider, especially at this court. It seems like it's just a whole lot more plausible to argue to us a due process claim. It feels like the kinds of things that we are traditionally responsible for doing and might be able to handle in very traditional ways that is very different from, from asking us to come in and decide how guards should, should interact with each other. Well, and we're not asking you to decide how the guards interact with each other. But an Eighth Amendment claim on a failure to protect is going to get us into those kinds of issues, and that was one of the concerns by the court. Do you have more questions or? Judge Rakoff? No, I'm, I'm ready to hear from you. Okay. Yeah, we'll, we'll still give you time for rebuttal. Thank you. Good afternoon, your honors. May it please the court. Assistant United States Attorney Margaret Chen on behalf of appellees. The district court's dismissal of appellant's claims should be affirmed because Egbert v. Bull is dispositive of each of his remaining claims. So my question, the same I put to your adversary counsel, is, okay, under the present complaint, he doesn't make it. And Egbert makes that clear. But why not send it back with leave to amend, given that there are other things, including some that have come up in this very argument, like possible due process claim, that he's pro se? Why not give him another shot at amending? The court should not remand this case to the district court for appellant to be granted leave to amend because Egbert is dispositive of each of his claims. Plaintiff simply put, appellant simply put, cannot state a cognizable Bivens claim. You don't think that even if they could amend that they can survive Egbert? Is that right? As Judge Nelson aptly observed, the Supreme Court and Egbert extremely narrowed, and it seems the test. Right, but the medical, but the medical indifference claim looks very much like Carlson. Are you telling us that Egbert would exclude that one as well, if, assuming that Mr. Chambers could amend his complaint and provide the detail that he did not provide us? Even assuming that Mr. Chambers provided additional facts, as the district court indicated, would potentially allow him to state a plausible claim for medical indifference, a deliberate indifference to medical need, that his claims still arises in a new context and would require the court to. Well, how does this medical indifference claim arise in a different context from Carlson? In Egbert, the Supreme Court stated that a plaintiff cannot justify a Bivens extension based on parallel circumstances with the three cases in which the Supreme Court has recognized a Bivens cause of action, Bivens, Passman, and Carlson, unless the plaintiff also satisfies the prevailing analytical framework, the two-step test of new context. So, let me just back up. So, are you agreeing or disagreeing that as to medical indifference, this is a new context? I agree that the deliberate indifference claim would arise in a new context. Wait, you, hold on. You agree it would arise in a new, I mean, I think the question is, the Supreme Court in Carlson said medical, failure to provide adequate medical care was cognizable under a Bivens claim, right? Correct, but- Go ahead. Applying the analytical framework, the new context prong is very easily satisfied. It's not a heavy burden. Even a modest extension is an extension of Bivens. What is the modest extension here? I mean, that it's a broken arm as opposed to a broken leg. That's a modest extension? In Abbasi, the Supreme Court provided a non-exhaustive list of kinds of differences that could make a claim arise in a new context, including the rank of officer involved, the generality or specificity of the action challenged as unconstitutional, and the extent of judicial guidance as to how an officer should respond. This feels like strict scrutiny in which you have confined Carlson to his facts and that no prisoner could possibly bring another action for medical indifference under Bivens unless their last name is Carlson. Well, under Egbert, that is the test that would apply today. That is the test. Only Carlson can bring a new claim under Carlson. That means then the Bivens is dead, which is what Justice Sotomayor said, and some of the rest of us are scratching our heads, wondering what survived. But the court told us that it wasn't prepared to overrule Bivens yet. Standing here today, the test articulated by Egbert certainly has narrowed the tests and heightened the... I agree with that, but your reading of this would undo it entirely. Your reading is so tight and so strict, there isn't anything that is left of it. Well, the court, even for a Carlson-like claim brought today by Mr. Chambers, under the Supreme Court's decision in Egbert... Well, which of those factors? You listed off those factors. I've read those factors. Which of those factors are distinguishable from Carlson then for the medical indifference claim? So Carlson arose from allegations related to a serious medical need arising from a failure to treat an inmate's serious asthma resulting in death. So here, Mr. Chambers' deliberate indifference claim arises from allegations that physician's assistant, Escatini, delayed in providing him an x-ray for a suspected arm fracture, wrist fracture. There are numerous differences just within those facts. We have the different kinds of provider, different kinds of mechanism of injury, and the different sort of challenge conduct. If Mr. Chambers comes in with an asthma claim, then he may have a Bivens claim, but if he comes in with a broken wrist, he doesn't? Well, even assuming that Mr. Chambers presented sort of a factual claim, a similar factual circumstances as Carlson, Egbert instructs the court to analyze special factors. Okay, well, that seems to be your better argument. And so, I mean, I think you've sort of chosen perhaps the wrong hill to fight on. Because, I mean, just going back to this before we move on to the special factors, I don't think we'd be making the same arguments in a search and seizure case. I mean, Justice Thomas, the majority opinion is pretty clear that Egbert does nothing to disturb the search and seizure context. And those facts could be, I mean, they're never gonna be the same. They're gonna have different variances like this. So if we don't get there, what are the special factors? I mean, has that test been changed? Has that been tightened for the special factors? It has, Your Honor. In conducting a special factors analysis, the question that a court faces is whether there is any rational reason, even one, to think that Congress is better suited to weigh the costs and benefits of creating a new damages cause of action. And if there is even a single reason to pause before applying Bivens to a new context, a court may not recognize a Bivens remedy. So here's, I've read that language. I agree with you. And in reading it, I would say, yeah, there seems to be a reason here. I mean, most basically, just in the prison context. I mean, you could articulate a reason and say, in the prison context, we're gonna defer to the prisons and we need to do that. That's a reason that Congress has given. They've created these alternative remedies. The problem with that is if you take that to an extension, then even, because Carlson was in a prison context. So if you take that rationale to a logical conclusion, then Carlson has also been overruled. I mean, how do we give heed to Carlson and say that still exists, but there's a special condition here that makes it, that differentiates it? Carlson still exists. However, the relevant test for analyzing whether or not a judicial cause of action should be created has changed since the time of Carlson. I think that's right. But you still, I don't think we can say that it's changed so much that it, whatever articulation of that test, it seems to me that we give, still has to, we have to be able to square that with Carlson. I mean, if we come up with a special condition, special factor that we would say applies here, but if you applied it to Carlson, you would undo Carlson. I'm not, I don't understand how we can do that. Logically. So Carlson, Carlson exists. Carlson, the Supreme Court has recognized a Bivens remedy under the circumstances in Carlson. And even if presented with the identical case today, you know, the Supreme Court has said that you still need to conduct the two-factor analysis. Carlson was decided, you know, more than 40 years ago. And in allowing the Bivens claim to proceed, the Carlson court only considered the following three potential special factors. One, whether the defendants enjoy such independent status in our constitutional scheme as to suggest that a judicially created remedy against them might be inappropriate. Two, whether requiring them to defend plaintiff's suit might inhibit efforts to perform their official duties. And three, whether there was an explicit congressional declaration precluding a damages action in this context, which provided another remedy equally effective in the view of Congress. So it seems though that your argument boils down to that even if Carlson came in, had asthma again, his last name's Carlson, everything else is the same, you would say, well, it's not a new context, but now there's a special factor he still couldn't recover. There would be a special fact, there, what I'm saying is that there, the Supreme, under Egbert, the Supreme, the courts would be required to conduct a special factors analysis. Right, and if Carlson, if the exact same case as Carlson came in today, 42 years later, he would lose. That seems to be what you're saying. Not because it's a new context, but because the special factors that we apply now are different than what we applied 42 years earlier, and so we wouldn't recognize it because the special factors demand. Isn't that your argument? Potentially, under the new test special factors analysis, how that has been narrowed by the Egbert court. It sounds like Justice Gorsuch might have been right then in his concurrence that Bivens really doesn't exist anymore, if that's the argument that we were to adopt. Turning to, I want to address briefly the waiver argument raised by appellant. The plaintiff in Egbert made a similar waiver argument and the Supreme Court rejected it, and in doing so, the Supreme Court stated that because recognizing a Bivens cause of action is an extraordinary act that places great stress on the separation of powers, courts have a concomitant responsibility to evaluate any grounds that counsel against Bivens' relief. Appellee's position is that Egbert is dispositive of the excessive force and deliberate indifference claims as well when analyzed under the Egbert and Abbasi framework. Easily, as the judges observed- What about the position that they seem to suggest you would agree that you did not challenge I guess the excessive force and the lack of medical care. You didn't challenge those in your opening brief, correct? They were not raised in our answering brief that came before Egbert. Right, but your position is that the supplemental briefing, you were justified in relying on Egbert and that's enough to challenge it. So that's before us as to whether they've stated a claim in light of Egbert. That's correct, Your Honor. Do you think more briefing is needed to give them an opportunity to address that argument, which they claim was raised for the first time and they haven't had a full chance to brief it? What's your position on that? Although the issue was, certainly the court could invite additional briefing if it felt necessary. However, if my recollection serves me, I believe they addressed this in their supplemental Egbert briefing, which was simultaneously filed. But the bottom line for the government is that we should not grant them leave to amend, not because Mr. Chambers told the district court that he was not interested in amending his brief or amending his complaint, wanted to stand on the complaint he had filed, but because it would be utterly futile because there is no basis on which there are no facts he could plead here that would get any of his three claims through. Under, I think the appellee's position is that the court should affirm the district court's dismissal. There are multiple grounds for the court to affirm the dismissal. One is that all of his claims are foreclosed under Egbert. And secondly, you know, even assuming that the court were to find that Egbert somehow did not apply to the excessive force and deliberate indifference to medical claim, medical need claims, the plaintiff expressly decided to stand on his second amended complaint and pursue this appeal. So therefore, he shouldn't have a chance to amend, even though the district court dismissed with the opportunity for leave, you're saying he's basically forfeited his right to amend by not amending before the appeal. I thought the district court specifically allowed him to take the appeal, but said he could amend even after the appeal. The district court dismissed the excessive force and deliberate indifference claims with leave to amend. However, Mr. Chambers elected to stand on the second amended complaint, asked the court to enter judgment so that he could pursue this appeal. Okay. If there are no further questions, appellees ask the court to affirm the dismissal of the second amended complaint in its entirety. Thank you, counsel. We'll give you three minutes for rebuttal. Two points on rebuttal. I'd like to first address the special factors and hesitation issue that my opponent brought up, specifically that Congress has, that we should focus on what Congress wants and the court should not step into Congress's role, particularly in the issues around alternative Bureau of Prisons remedies. Congress has thought about this. They, in fact, have issued a number of statutes over the years, the PLRA, the Westfall Act, the FTCA, Bureau of Prisons Remedies in general. None of these individually foreclosed Bivens through the lens of Carlson in this case. If the court here rules so narrowly, then Carlson itself would not have survived holding an Egbert in the test that supplied an Egbert. Yeah, although Congress has been put in a very funny position because once the court went down the road of finding a Bivens revenue in the Constitution, Congress pretty much needed to acquiesce in that. It might be able to tinker around the edges. It might be able to create different remedies or greater remedies, but it didn't look like it could simply overrule Bivens through legislation. So at that point, Congress is somewhat limited, and through the PLRA and things like that, it's tried to regularize some of the ways in which we approach these prisoner cases. So I'm not sure that Congress has had a full and fair shot until maybe Ziegler and Egbert, when the court has said, you know something, we're backing off. If you want to do something more here, do it. But we're going to get out of this business. So in response to that, Congress has the power to do what they would like to do, if they would like to act on this issue. Again, they've had decades to give that a go, and they have chosen not to. The fact that they would have to acquiesce to a court's decision on this matter, I think in this particular case, and looking through the lens of all of this, all of this different legislation, Congress can do that. If Congress decided that there wasn't anything further that it wished to do, but it also wished for the court to stay out of this, what would Congress have to say? Well, they would have to speak, and they have yet to do so. And if Congress doesn't speak, then the court can step in? That is what Bivens has allowed, yes. Well, that's what Bivens has allowed, but it looks like Egbert has said, we're not going any farther than we've gone. And that's fine, but Egbert didn't foreclose Bivens, and didn't shut that option down completely. So there is still space to move, is what we would argue. But what about this language? I mean, it does say, is there any factor, any reasonable factor? It's not a high test. Any reasonable factor to suggest that Congress would be better equipped than the courts? I mean, I'd say about 20 times out of 20, Congress is better equipped than the courts to deal with these factors. How do we apply that test, which does seem more stringent than what had previously been applied, and still allow claims like Carlson, to exist? I would hesitate to step into your particular role in analyzing it. However, what I would say is, there is room, and it will be a matter of what factors are considered. In this particular case, we would argue that the factors are not present for the reason in our briefs, and also the reasons we've discussed earlier. There are certainly cases, like the recent case this court ruled on in Mejia, the Fourth Amendment case about Bureau of Land Management. There were a lot of factors in that case that caused hesitation, and the ruling there was understandable. Here, this is a very closed setting with regards to the facts. And I see I'm out of time. So, thank you. Okay, thank you. Thank you to both counsel for your arguments in this interesting case. We thank the law school. Thank you for training up good lawyers. We always appreciate seeing the law students in here, and the preparation that you do. And it's important, and you've acquitted yourself well, and been good for the university, and for your clients. So, that's great. With that, the court is adjourned for the day.
judges: BYBEE, NELSON, Rakoff